**Levi O'NEAL, Plaintiff–Appellant,**

v.

**ARGONAUT MIDWEST INSURANCE CO., Defendant–Respondent.**

**No. SD 32574.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 20, 2013.

John Wooddell and Brian L. Shepard, Bruer, Wooddell & Harrell, P.C., Springfield, MO, for Appellant.

Michael Hufft, Hufft & Maginn, L.L.C., Kansas City, MO, for Respondent.

**722**

GARY W. LYNCH, J.

Levi O'Neal appeals the trial court's grant of summary judgment against him and in favor of Argonaut Midwest Insurance Company ("Argonaut") and the denial of his cross-motion for summary judgment on his petition for equitable garnishment on a motor vehicle liability policy issued by Argonaut (the "Argonaut Policy") to Auto by Rent Leasing, L.L.C. ("Auto by Rent"), the owner of a 1998 Nissan. Finding that the Argonaut Policy provides the $25,000 minimum coverage required by the Motor Vehicle Financial Responsibility Law (MVFRL) [1] for Levi's personal injury damages arising from the negligence of Kristen O'Neal, his sister, while she was driving the Nissan, we reverse and remand.[2]

### Factual and Procedural Background

On August 1, 2006, Theresa O'Neal, the mother of Levi and Kristen, leased the Nissan from Auto by Rent for two years. At that time, and all relevant times thereafter, the Argonaut Policy, procured by Auto by Rent as owner of the Nissan, provided "Liability Coverage ... when, at the time of the 'accident', the insurance required by the lease agreement on the 'leased auto' is not in effect or is not collectible[.]" [3] In the written lease agreement on the Nissan between Theresa and Auto by Rent, Theresa agreed "to provide at least the following coverage ("Required Insurance") on the [Nissan] at all times during this Rental: (a) LIABILITY for bodily injury or death of others in an amount of at least $100,000 per person and $300,000 per occurrence[.]" Theresa purchased a motor vehicle liability policy from

Haulers Insurance Company, Inc. (hereinafter the "Haulers Policy"), which provided the liability coverage required in the lease agreement except when Kristen was driving the Nissan. The Haulers Policy contained a named driver exclusion, which excluded Kristen as an insured.

On November 29, 2006, Levi was a passenger in the Nissan being operated by Kristen, as a permissive user. On that date, Kristen was involved in a motor vehicle accident involving the Nissan, which caused injuries to Levi. The Circuit Court of Stone County, on June 7, 2012, entered judgment against Kristen and in favor of Levi in the amount of $273,169.00 for his injuries suffered in the accident. After applying a credit for $25,000 paid by Haulers on behalf of Kristin and $5,000 paid by State Farm on behalf of Sara Long, the driver of the other vehicle involved in the accident, there remained a balance of $243,169.00 still due and owing on the judgment.

Thereafter, seeking to partially satisfy his judgment against Kristen, Levi filed this action for equitable garnishment against Argonaut, seeking a judgment that the Argonaut Policy provided liability coverage for Kristen's "negligent operation of the Nissan" and that "the $25,000 minimum limits required by MVFRL [are] available to [Levi] in these circumstances[.]" Argonaut generally denied that its policy provided any coverage for Levi's claim against Kristen and specifically affirmatively asserted that its policy provided no liability insurance at the time of the accident because the Haulers Policy,

---

**1.** Chapter 303, RSMo 2000. All statutory references are to RSMo 2000, unless otherwise indicated.

**2.** Because several members of the O'Neal family are involved in the facts of this case and have the same last name, we refer to each

by his or her first name for clarity. No familiarity or disrespect is intended.

**3.** It is uncontroverted that the Nissan is a "leased auto" as that term is defined in the Argonaut Policy.

secured by Theresa in the amounts required by the lease agreement, was in effect and was collectible.

Argonaut filed a motion for summary judgment claiming that it was "entitled to judgment in its favor as a matter of law because the [Argonaut Policy] does not provide a duty to indemnify [Kristen] with regard to the judgment that was entered against her" and in favor of Levi. In its suggestions in support, Argonaut argued Levi could not prove coverage for two reasons. First, its policy "provided liability coverage ... if and only if at the time of the accident the insurance required by the written lease agreement on the [Nissan] is not in effect or is not collectible[,]" and, at the time of the accident, the Haulers Policy—the insurance required by the lease agreement on the Nissan—was in effect and was collectible. Second, its policy contains an escape clause that provides it is "contingent only, and if there is any other collectible insurance whether primary, excess, contingent or self insurance, this insurance does not apply."

Levi opposed Argonaut's motion for summary judgment and filed a cross-motion for summary judgment claiming that "as a matter of law, the [Argonaut Policy] provides coverage for [Kristin's] conduct, so as to satisfy, up to its limits, the judgment[.]"

Upon these cross-motions for summary judgment, the trial court entered judgment in favor of Argonaut, finding that

[t]he [Argonaut Policy] is a contingent liability policy that does not provide any liability coverage or any no-fault coverage for [Kristin] because, at the time of the "accident" in which [Levi] was injured, [Kristen] was operating a covered "auto" which was a "leased auto" and because, at the time of the "accident" in which [Levi] was injured, the insurance required by the lease agreement on the

"leased auto" between Auto by Rent and [Theresa] was in effect or was collectible."

In addition, the trial court's judgment ordered that Argonaut was not obligated to provide a defense to and had no duty to indemnify Kristin for any judgment in favor of Levi or any other person for personal injury damages in any litigation arising from the accident.

Levi timely appeals, claiming that the trial court erred as a matter of law in granting summary judgment for Argonaut and denying his cross-motion for summary judgment because "[t]he MVFRL requires that all policies of insurance issued to automobile owners must provide coverage for injuries caused by permissive users" and, in accordance with MVFRL, the Argonaut Policy "must be interpreted to provide coverage for [Kristen's] conduct, in that ... the policy was issued to the owner of an automobile; ... that automobile was a covered auto under this policy; and ... [Kristin] was a permissive user within the meaning of § 303.190.2." Levi also argues that the "contingent liability" provision—the insurance required by the written lease agreement on the Nissan is not in effect or is not collectible—is void for conflicting with the mandatory coverage requirement of section 303.190. In the alternative, if it is given effect, Levi argues that the contingency occurred.

Argonaut responds that the contingent liability provision in its policy did not occur because the Haulers Policy was in effect and collectible and that the trial court did not err in entering judgment in its favor because its MVFRL responsibility was met by being named as an additional insured under the Haulers Policy. Argonaut further argues that the "escape clause" in its policy nevertheless shifts the primary liability to the Haulers Policy.

### Standard of Review

"Summary judgment is appropriate when there is no dispute as to the material facts and the movant has established a right to judgment as a matter of law." *Karscig v. McConville*, 303 S.W.3d 499, 502 (Mo. banc 2010) (citing *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381–82 (Mo. banc 1993)). " 'As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.' " *Rutledge v. Bough*, 399 S.W.3d 884, 886 (Mo.App.2013) (quoting *ITT*, 854 S.W.2d at 376). The facts here are undisputed. We review *de novo* the interpretation of the written lease agreement between Auto by Rent and Theresa, the Argonaut Policy, the Haulers Policy, and the application of the MVFRL to those policies. *See Karscig*, 303 S.W.3d at 502; *Am. Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89–90 (Mo. banc 2000); *Rutledge*, 399 S.W.3d at 886.

### Discussion

#### Argonaut Policy Contingency Occurred

■ We first address the provision in the Argonaut Policy that Argonaut claimed in the trial court and now claims on appeal makes its policy a "contingent liability policy" so that coverage "was not triggered." We need not address, however, the validity of such a provision in the first instance, as the parties urge upon us, because applying the uncontroverted facts to the plain and ordinary language of the policy and the written lease agreement, the Argonaut Policy contingency occurred and coverage was triggered.

■ The Argonaut Policy provides "Liability Coverage ... when, at the time of the 'accident', the insurance required by the lease agreement on the 'leased auto' is not in effect or is not collectible." "When interpreting insurance policy language, courts give a term its ordinary meaning unless it plainly appears that a technical meaning was intended." *Mendenhall v. Prop. & Cas. Ins. Co. of Hartford*, 375 S.W.3d 90, 92 (Mo. banc 2012). While "accident" and "leased auto" are technical terms defined in the policy, neither are in dispute by the parties. The time of the accident was November 29, 2006, when the Nissan, driven by Kristen with Levi as a passenger, collided with another vehicle driven by Sara Long. The Nissan is the "leased auto." The questions for our resolution are what is "the insurance required by the lease agreement" and whether it was "not in effect" or "not collectible" at the time of the accident.

■ "[T]he insurance required by the lease agreement," in the words of the lease agreement, is "4. *REQUIRED INSURANCE:* You agree to provide at least the following insurance coverage ("Required Insurance") on the Property *at all times* during this Rental: (a) LIABILITY for bodily injury or death of others in an amount of at least $100,000 per person and $300,000 per occurrence[.]" (Emphasis added). When interpreting a contract to ascertain the parties' intent and to give effect to that intent, "we ... give the words their plain and ordinary meaning." *Capitol Grp., Inc. v. Collier*, 365 S.W.3d 644, 649 (Mo.App.2012). Therefore, the lease agreement required that Theresa provide liability insurance coverage at the time of Kristen's accident for Levi's bodily injury in the amount of at least $100,000. The Haulers Policy, procured by Theresa, however, expressly excluded any liability coverage when Kristen was driving the Nissan and only provided liability coverage, as mandated by MVFRL, for Levi's benefit in the amount of $25,000. *See Karscig*, 303 S.W.3d at 504.

■ The word "collectible" as used in the contingency clause of the Argonaut Policy does not appear to have a technical meaning. Neither party has cited us to anything in the record or relevant case law indicating it has a technical meaning. "Therefore, the standard English dictionary definition governs." *Mendenhall,* 375 S.W.3d at 92. The dictionary defines "collectible" as "due for present payment." MERRIAM-WEBSTER'S 11TH COLLEGIATE DICTIONARY 243 (2005). By the express terms of the Haulers Policy, the $100,000 bodily injury liability coverage, as required by the lease agreement, was not "due for present payment" at the time of the accident because Kristen was an excluded driver. Therefore, the insurance required by the lease agreement was "not collectible" by Levi at the time of the accident, and the liability coverage of the Argonaut Policy was thereby triggered by its express terms.

### Argonaut Policy Provides $25,000 Coverage Under MVFRL

■ The Argonaut Policy by its express terms excludes Kristen as an insured because she is a "family member or member of the household of any lessee." This exclusion is not valid because "[t]he plain language of the section 303.190.2 indicates that every owner's policy issued in this state must provide the minimum liability coverage to comply with Missouri law, and this Court's [referring to the Supreme Court of Missouri] decision in *Halpin* holds *all* household exclusion clauses inval-

id up to those minimum limits of coverage." *Am. Standard Ins. Co.,* 34 S.W.3d at 91 (referencing and citing *Halpin v. Am. Family Mut. Ins. Co.,* 823 S.W.2d 479, 483 (Mo. banc 1992)).

Argonaut counters with a two-fold argument that its policy should not be construed to provide minimum MVFRL coverage: first, Auto by Rent complied with the mandates of MVFRL by being named as an additional insured under the Haulers Policy; and, second, by its express terms, referred to by Argonaut as an "escape clause," its policy shifts primary liability to Theresa and her Haulers Policy. Neither argument has any merit.

■ Whether Auto by Rent, as the owner of the Nissan, was a named insured under the Haulers policy has no bearing upon and is irrelevant to the issue before us as to whether the Argonaut Policy provides minimum liability coverage under MVFRL to Kristen, as a permissive driver of the Nissan. "According to the MVFRL, a motor vehicle liability policy shall be either 'an owner's or an operator's policy of liability insurance.'" *Karscig,* 303 S.W.3d at 503 (citing section 303.190.1). As a policy issued to an owner, the Argonaut Policy is an "owner's policy," and it "must comply with the statutory mandates of § 303.190.2[.]" *Id.* Therefore, the MVFRL requires it to provide minimum liability coverage of $25,000. *Id.* at 504. In addition, section 303.190.2(2) requires that this coverage extend to the liability of a permissive user, such as Kristen.[4] Sec-

4. Section 303.190.2(2) provides that an owner's policy of liability insurance:

[s]hall insure the person named therein *and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured,* against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such mo-

tor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily in-

tion 303.190.2(2). "Missouri law does not restrict coverage to a single policy if a driver is insured under multiple policies." *Id.* at 500–01 (citing *Am. Standard Ins. Co.,* 34 S.W.3d at 91–92).

■ Argonaut's second argument is that the escape clause [5] in its policy should be "treated as a valid 'other insurance' clause under MVFRL." This is similar to the argument apparently raised by the insurer in *Am. Standard Ins. Co.*—"once a policy is deemed to be excess insurance, and the primary insurer satisfies its minimum liability coverage under the MVFRL, then the excess policy is no longer subject to the statutory requirements." *Am. Standard Ins. Co.,* 34 S.W.3d at 91. This argument was rejected in *Am. Standard Ins. Co.* because, even though "excess insurance coverage is not subject to the minimum financial requirements of section 303.190, each owner's policy must still provide the minimum requirements outlined in section 303.190.2." 34 S.W.3d at 92. We likewise reject Argonaut's argument here on the same basis.[6] The mere existence of other insurance cannot contractually deny coverage that the MVFRL statutorily requires in an owner's policy.[7] *See id.*

For the above reasons, the trial court erred in granting Argonaut's motion for summary judgment and in denying Levi's cross-motion for summary judgment because Argonaut was not entitled to judgment as a matter of law and Levi was so entitled.

### Decision

The trial court's judgment granting Argonaut's motion for summary judgment is reversed, and the case is remanded to the trial court with directions to grant Levi's cross-motion for summary judgment and enter judgment in favor of Levi consistent with this opinion.

DON E. BURRELL, JR., and MARY W. SHEFFIELD, JJ., concur.

---

jury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident (Emphasis added).

**5.** The Argonaut Policy "escape clause" provides that "[i]t is agreed that the insurance afforded by this endorsement is contingent only, and if there is any other collectible insurance whether primary, excess, contingent or self insurance, this insurance does not apply."

**6.** Argonaut relies upon *Irvin v. Rhodes,* 929 S.W.2d 829, 831 (Mo.App.1996), and *Budget Rent A Car of St. Louis v. Guaranty Nat'l Ins. Co.,* 939 S.W.2d 412 (Mo.App. E.D. 1996), to support its shifting argument.

Such reliance is misplaced and is not persuasive because both cases were decided before our Supreme Court clearly spoke in *Am. Standard Ins. Co.* and *Karscig* as to the minimal financial responsibility coverage required in every owner's policy under section 303.190.2, regardless of the existence of multiple liability policies providing such coverage. *Am. Standard Ins. Co.,* 34 S.W.3d at 91; *Karscig,* 303 S.W.3d at 504.

**7.** Argonaut's shifting argument might have some merit in allocating responsibility between the Haulers Policy and its policy if Levi's damages had been less than $25,000. That issue, however, is not before us and is not decided here because Levi's uncompensated damages far exceed the available coverage.